*The Honorable Judge Robert S. Lasnik*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WESTERN WASHINGTON

| | |
|---|---|
| Washington Shoe Company, a Washington Corporation, | ) **Cause No. 2:09-cv-01042 RSL** |
| | ) |
| Plaintiff, | ) |
| | ) **Washington Shoe Company's** |
| v. | ) **Opposition to Defendant's Motion** |
| | ) **to Dismiss** |
| A-Z Sporting Goods Inc, an Arkansas Corporation doing business as A-2-Z WHOLESALE.com, | ) |
| | ) **Noted for Consideration:** |
| | ) **October 2, 2009** |
| Defendant. | ) |
| | ) |
| | ) |

**McCormack Intellectual Property Law**
**Business Law PS**
617 Lee Street
Seattle, Washington 98109
T: 206-381-8888
F: 206-381-1988

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     FACTS ................................................................................................................1

III.    STANDARD OF PROOF ON MOTION TO DISMISS FOR OPPOSING
        PARTY ................................................................................................................7

IV.     FEDERAL CLAIM OUTSIDE STATE COURT JURISDICTION .....................9

        A.      Minimum Contracts Doctrine ................................................................ 9

        B.      Limited ("Specific") Personal Jurisdiction ............................................. 9\\

                1.      The Purposeful Requirement ........................................................10

                2.      The "Arising Out Of" Requirement.............................................12\\

                3.      The Fairness Requirement ............................................................13

        C.      Additional Bases for Specific Jurisdiction.............................................. 15

                1.      Intentional Torts.............................................................................15

                2.      Jurisdiction Based on Where Corporation Suffers Harm
                        (Copyright and Trademark Infringement) .....................................16

        D.      General  Personal Jurisdiction ................................................................. 17

                1.      Maintaining Web Site Accessible To Local Computer User As
                        A Basis For Jurisdiction................................................................18

        E.      Washington State Long-arm Statute ........................................................ 19

        F.      Washington State –Doing Business Common Law-Rule ......................... 21

V.      DISCOVERY TO DETERMINE JURISDICTIONAL FACTS ...........................21

VI.     CASE MAY BE TRANSFERRED TO DISTRICT IN WHICH
        DEFENDANT IS SUBJECT TO PERSONAL JURISDICTION ........................23

VII.    CONCLUSION...................................................................................................24

i

# TABLE OF AUTHORITIES

**Page**

Cases

*Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995) ............................................................ 7, 8

*Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082 (9th Cir. 2000) ....... 16

*Burger King v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174 (U.S. 1985) ......... 10, 12, 13, 14

*Cable/Home Communication Corp. v. Network Productions, Inc.*,
    902 F.2d 829 (11th Cir. 1990) ................................................................................. 17

*Calder v. Jones*, 465 U.S. 788, 104 S.Ct. 1482 (U.S. 1984) .......................... 11, 15, 16, 17

*CompuServ, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996) .......................................... 18

*Credit Lyonnais Securities USA, Inc. v. Alcantara*, 183 F.3d 151 (2nd Cir. 1999) .... 21, 22

*Cybersell, Inc, v, Cybersell, Inc*, 130 F.3d 414 (9th Cir. 1997) ....................................... 19

*Data Disk, Inc. v. Systems Technology Associates, Inc.*,
    557 F.2d 1280 fn.5 (9th Cir. 1977) .......................................................................... 22

*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) ................................ 15, 16, 17, 20

*Dorsey v. American Golf Corp.*, 98 F.Supp.2d 812 (E.D. Mich. 2000) ........................... 18

*Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344 (Fed. Cir. 2003) ........................... 8

*Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913 (U.S. 1962) ................................ 23

*Gordy v. Daily News LP*, 95 F.3d 829 (9th Cir. 1996) ..................................................... 15

*Graduate Management Admission Council v. RAJU*,
    241 F.Supp.2d 589 (E.D. Va. 2003) ........................................................................ 18

*Haisten v. Grass Valley Medical Reimbursement Fund Ltd.*,
    784 F.2d 1392 (9th Cir. 1986) ................................................................................. 10

*Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228 (U.S. 1958) ........................................ 11

*Harris Rutsky & Co. Ins. Svcs. Inc. v. Bell & Clemens, Ltd.*,
    328 F.3d 1122 (9th Cir. 2003) ................................................................................... 8

*International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154 (U.S. 1945) .............. 9

*Jobe v. ATR Marketing, Inc.*, 87 F.3d 751 (5th Cir. 1996) .............................................. 22

ii

*Keds Corp. v. Renee International Trading Corp.*, 888 F.2d 215 (1st Cir. 1989)...... 17, 20

*Kulko v. Supreme Court*, 436 U.S. 84, 98 S.Ct. 690 (U.S. 1978) ...................................... 11

*Lewis v. Fresne*, 252 F.3d 352 (5th Cir. 2001) ................................................................ 15

*Michigan National Bank v. Quality Dinette, Inc.*, 888 F.2d 462 (6th Cir. 1989) ............. 19

*Nuovo Pignone Spa v. Storming Asia MV*, 310 F.3d 374 (5th Cir. 2002) ......................... 8

*Ochoa v. JB Martin & Sons Farms, Inc.*, 287 F.3d 1182 fn.2 (9th Cir. 2002) ................. 10

*Orchid Biosciences, Inc. v. St. Louis University*, 198 F.R.D. 670 (S.D. Ca. 2001).... 21, 22

*Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S. Ct. 413 (U.S. 1952). 18

*Raymond v. Robinson*, 104 Wash. App. 627, 15 P.3d 697 (Div. 2 2001)......................... 21

*Real Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007 (9th Cir. 2002).......... 8

*Roman v. Ashcroft* 340 F.3d 314 (6th Cir. 2003)......................................................... 23, 24

*SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172 fn.9 (2nd Cir. 2000) ...................... 23

*Viernow v. Euripides Develop. Corp.*, 157 F.3d 785 (10th Cir. 1988) ............................. 23

**Statutes**

28 U.S.C. § 1404(a) ......................................................................................................... 23

28 U.S.C. § 1406(a) ......................................................................................................... 23

RCW 4.28.185 ............................................................................................................ 19, 20

**Rules**

Fed. R. Civ. 12(b)(2)..................................................................................................... 21, 22

iii

## I.   INTRODUCTION

Lack of personal jurisdiction is the basis for defendant's motion to dismiss. Plaintiff, Washington Shoe Company, opposes defendant's motion.

## II.   FACTS

Washington Shoe Company (hereinafter, "Washington Shoe") has been in business locally for *over one-hundred years*.   DECLARATION OF ROB MOEHRING ("R. MOEHRING"), filed concurrently herewith, ¶ 2.   Washington Shoe creates, manufactures, and sells several lines of boots and shoes, including its famous kids "Spider" rain boot and the "Ditsy Dot" rain boot, a design so popular that it sells in many national chains. *Id*.   The *Spider* and *Ditsy Dot* boots are the subject of this present lawsuit.

The following are pictures of Washington Shoe's famous boot designs.





**Spider**
**Copyright Registration No.**
**VA0001429389**

**Ditsy Dot**
**Copyright Registration No.**
**VAu000756950**

DECLARATION OF TIMOTHY M. MCCORMACK ("MCCORMACK DECL.") ¶ 2, EXHIBITS 1 AND 2.

A-Z ("defendant") is the owner and operator of several retail stores selling, among other things, rain boots and rain accessories.   DEFENDANT'S MOTION TO DISMISS, p.1: lns. 22 – 26.   Additionally, defendant is a customer of Washington Shoe and obtains many of these items directly from Washington Shoe.   R. MOEHRING DECL. ¶ 3.   In fact, over the past several years, defendant has purchased more than 3,000 items from

1

Washington Shoe's lines of men's, women's and children's boots and accessories.  R. MOEHRING DECL. ¶ 6, EXHIBIT 1.  It is from this on-going business relationship that the present litigation arises.  Here are the key facts.

Washington Shoe owns the copyrights to the *Spider* boot design, depicted above, under U.S. Copyright Registration No. VA0001429389 (effective 3/22/07) and the *Ditsy Dots* boot design, also depicted above, under No. VAu000756950 (effective 8/09/07). MCCORMACK DECL. ¶ 4, EXHIBITS 1 AND 2. The location of Washington Shoes intellectual property is here in Washington State, including the copyrights at issue. Defendant purchased, displayed and sold boots infringing Washington Shoes' copyrighted designs.  Those boots shall be referred to collectively as the "Infringing Boots."  Defendant's purchase, display and sale of the Infringing Boots was done after the effective date of Washington Shoe's copyright registrations.  As described below, defendant knew of Washington Shoe's intellectual property rights in these boot designs and intentionally and willfully disregarded the same for its own financial gain.

The relationship between defendant and Washington Shoe began several years ago.  By defendant's own admission, Tonia Dray, officer and manager of A-Z, was given, and had access to, Washington Shoes' brochures and catalogues.  DECLARATION OF TONIA DRAY "DRAY DECL.", ¶ 2 AND DECLARATION OF JESSIE JAMES ("JAMES DECL.") ¶ 3.  Having liked what it saw, defendant established a business relationship with Washington Shoe by purchasing various boots and other items from Washington Shoe in October 2007.  R. MOEHRING DECL. ¶ 5, EXHIBIT 1.  Defendant, thereafter continuously and systematically purchased boots from Washington Shoe, totaling at least 3082 items

purchased, to date.   This is evidenced in the numerous invoices R. MOEHRING DECL. ¶ 6, EXHIBIT 1.

Following the first month sales and purchases, defendant was so pleased with Washington Shoe's boots and other products that it contemplated future transactions with Washington Shoe and created a continuing contractual relationship by applying for (and receiving) an open line-of-credit with Washington Shoe on November 13, 2007.    R. MOEHRING DECL. ¶ 7, EXHIBIT 2.   This line-of-credit was backed by the personal guarantee of A-Z's owner, James T. White, a copy of which is attached to the Application. *Id.*

Defendant was fully aware, from the inception of this business relationship, of the fact that Washington Shoe was located in the State of Washington and willfully chose to enter into a business relationship with Washington Shoe.  The original invoice, and every single subsequent invoice, was sent directly from Washington Shoe to defendant, and contained Washington's Shoe's name and address indicating that it was a Washington Company.  R. MOEHRING DECL. ¶ 9, EXHIBIT 1.  Further, the invoices indicated that the point of origin of the goods was Kent, Washington.  Additionally, the Application for Commercial Credit - with Washington Shoe's name on it in bold letters and Washington Shoe's *Washington* address just beneath it - was completed, by hand, by defendant and no one else. R. MOEHRING DECL. ¶ 10, EXHIBIT 2.

In addition to the line-of-credit, defendant paid for purchases with checks specifically made out to Washington Shoe Company.  R. MOEHRING DECL. ¶ 11, EXHIBIT 3. Defendant drafted these checks and printed Washington Shoe's name and Washington address on the front of the checks.  They were also signed by Ms. Dray, defendant's

3

officer and manager.



R. Moehring Decl. ¶ 11, Exhibit 3.

During the course of the three-year business relationship between Washington Shoe and defendant, Washington Shoe's salesman, Jessie James, visited defendant on several occasions with catalogues and brochures containing Washington Shoe's boots and other products.  Dray Decl. ¶ 2; Jesse James Decl. ¶ 3 and 5.   The covers of the relevant catalogues look like this:





McCormack Decl. ¶ 6, Exhibit 3-5 (catalogues attached).   Contained in these catalogues were depictions of the *Spider* and *Ditsy Dots* boots.   *Id.* Each of these catalogues contains statements similar to the following: **"All items protected by US**

4

**patents, copyrights and trademarks.  Unauthorized use is strictly prohibited.”**  This is an actual excerpt from one of the catalogues:

These Products are subject of US Patent, Copyrights, and Trademark. Unauthorized reproduction or use

is strictly prohibited. All rights reserved. Washington Shoe Company

MCCORMACK DECL. ¶ 6, EXHIBIT 3-5.  After Mr. James showed defendant the catalogues containing the *Spider* and *Ditsy Dot* boots, he left the catalogues with defendant to contemplate purchases.  JAMES DECL. ¶ 5.  Despite the fact that defendant had an on-going business relationship with Washington Shoe and that it had made more than 3,000 purchases over the course of the three years, defendant made the choice to not purchase the *Spider* boot or the *Ditsy Dot* boot from Washington Shoe.  Rather, it purchased Infringing Boots, likely at a cheaper price, in violation of Washington Shoe’s intellectual property rights with full knowledge of its wrong-doing.  This is the basis of the present lawsuit.

Contrary to defendant’s assertion that it “conducts no business” in Washington, by its own admission it conducts business all across the United States via eBay.  Here is a screen shot:

//

//

//



Below is a self-description of defendant's nation-wide online business, as can be seen on defendant's eBay sponsored buying/selling website:

> "The A to Z stores are a family-owned, fun atmosphere, specializing in wholesale merchandise. It began as a side-of-the-road venture, and in the last 15 – 20 years, has grown into its own semi strip mall along N. Highway 71 just outside of Alma, Arkansas. Having grown the business successfully within the local and surrounding areas, we felt it was time to **offer services to as many from the U.S. as possible through the ever-convenient eBay.**"

McCormack Decl. ¶ 7-8, Exhibit _6. Purchases can be made from defendant through defendant's eBay's on-line store.

Additionally, purchases can be made on-line directly from defendant's own website at a-zwholesale.com. McCormack Decl. ¶ 10, Exhibit 7. Exhibit 7 shows the opening page of defendant's website with a direct link to a second on-line store. McCormack Decl. ¶ 10. Exhibit 8 shows the page buyers are directed to when making a purchase. These purchases can be made from anywhere, including Washington. Defendant's statements to the contrary are false. *Id.*

When examining these websites, it can be seen that the company names and logos match – A to Z Factory Closeouts – which is the exact business name referred to in defendant's Motion to Dismiss and Ms. Dray's supporting declaration.   Thus, while defendant would have this Court believe that it only operates its "warehouse" website "strictly for informational purposes," this simply is not true.  MCCORMACK DECL. ¶ 11. These websites are active in nature, meaning that business and related transactions are conducted via these websites.  Defendant knew or should have known that its business model reached, "as many from the U.S. as possible through the ever-convenient eBay" (including Washington State) because that is what their numerous websites do and that is also their stated goal. *Id.*

The following facts, would further establish the requisite "minimum contacts" with Washington State to establish both general and specific jurisdiction.

1. Defendant has and has had systematic and continuous contractual relationships with Washington entities, including shoe manufacturers.

2. Defendant has sold and or imported the infringing boots in Washington.

3. Defendant has and has had systematic and continuous internet and retail sales and / or solicitations to U.S. residents and Washington state residents via the internet or otherwise.

MCCORMACK DECL. ¶ 12.

III.    **STANDARD OF PROOF ON MOTION TO DISMISS FOR OPPOSING PARTY**.

When a defendant's motion to dismiss is made as an initial response to a lawsuit, as it has been in this case, and the Court decides the motion without conducting an evidentiary hearing, plaintiff need only make a *prima facie* showing that personal jurisdiction exists.  *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

7

In this context, a "*prima facie*" showing means that a plaintiff has produced evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction, *e.g.* the existence of "minimum contacts" between defendant and foreign state. *See Harris Rutsky & Co. Ins. Svcs. Inc. v. Bell & Clemens, Ltd.,* 328 F.3d 1122, 1129 (9th Cir. 2003); *Real Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). Moreover, until an evidentiary hearing or trial on the merits, complainant's uncontroverted factual allegations must be accepted as true. Any factual conflicts in the party's declarations must be resolved in plaintiff's favor. *Harris v. Rutsky*, 328 F.3d 1122, 1129 (9th Cir. 2003); *Nuovo Pignone Spa v. Storming Asia MV*, 310 F.3d 374, 378 (5th Cir. 2002); and *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).

In response to defendant's motion to dismiss, plaintiff only needs to demonstrate a *prima facie* showing that personal jurisdiction exists and the court must accept complainant's uncontroverted factual allegations as true. *Ballard*, 65 F.3d at 1498; *Harris*, 328 F.3d at 1129. Washington Shoe has made a *prima facie* showing of personal jurisdiction in the facts section of Washington Shoe's original complaint and the attached declarations, notably:

1. Defendant had an on-going contractual relationship and a line-of-credit with Washington Shoe to purchase boots and shoes. As part of this on-going relationship defendant had access to Washington Shoe catalogues and brochures, including the Western Chief Kids and Western Chief Woman's catalogues that showed the copyrighted designs at issue.

2. Defendant made a choice. Rather than order the spider boot and the ditsy dot boot from the Washington Shoe catalogues as part of their on-going contractual relationship, defendant purchased infringing goods, in violation of Washington Shoe's intellectual property rights.

3. Based on the intellectual property statement contained in the Washington Shoe catalogues, defendant's purchase of infringing goods was willful.

8

4.   The infringement arose from a specific and on-going contractual relationship based in Washington State.

Because Washington Shoe has come forward with enough evidence to establish a *prima facie* case of personal jurisdiction against defendant, the motion to dismiss for lack of personal jurisdiction should be dismissed.

## IV.   FEDERAL CLAIM OUTSIDE STATE COURT JURISDICTION

For a claim that arises under federal law, like copyright infringement claims in this case, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (a) the defendant is not subject to jurisdiction in any state courts of general jurisdiction; and (b) exercising jurisdiction is consistent with the United States Constitution and Laws, which required "the minimum contacts," as discussed more fully below.

### A.   Minimum Contracts Doctrine

Absent one of the traditional bases for jurisdiction (presence, domicile, or consent) due process requires that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (U.S. 1945).  Application of the "minimum contacts" test is not a mechanical exercise.  Rather, personal jurisdiction depends on the facts of each case. The test being whether, under those facts, the forum state has sufficient relationship with the defendant and the litigation to make it reasonable ("fair play") to require him or her to defend the action in federal court located in that state. *Id.*

### B.   Limited ("Specific") Personal Jurisdiction

9

A nonresident defendant may be subject to jurisdiction on claims related to its activities or contacts with the forum state. *Burger King v. Rudzewicz*, 471 U.S. 462, 477-478, 105 S. Ct. 2174, 2184-2185 (U.S. 1985). *See also Haisten v. Grass Valley Medical Reimbursement Fund Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986). Such "limited" or "specific" personal jurisdiction requires a showing that: 1) the out of state defendant purposely directed its activities toward residents of the forum state or otherwise established contacts with the forum state; 2) plaintiff's cause of action arises out of or results from defendant's forum related contacts; and 3) the forum's exercise of personal jurisdiction in particular must be reasonable; comports with "fair play and substantial justice." *Id.*

Some courts (including the Ninth Circuit) adopt a "flexible approach" that may allow personal jurisdiction without meeting each of the above factors where "jurisdiction may be established with a lesser showing of minimum contacts, if considerations of reasonableness dictate." *Ochoa v. JB Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1188 fn.2 (9th Cir. 2002). Under the "flexible approach" a defendant who has not purposefully directed his activities to the forum state may nevertheless be subject to personal jurisdiction based on the creation of sufficient contacts such that the exercise of jurisdiction is reasonable. *Id.*

### 1.     The Purposeful Requirement

The first requirement of specific jurisdiction dictates that the nonresident defendant must have purposely directed its activities at the forum state or purposefully availed itself of the "privilege of conducting activities within the forum state thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235,

10

253, 78 S.Ct. 1228, 1240 (U.S. 1958); *Kulko v. Supreme Court*, 436 U.S. 84, 94, 98 S.Ct. 690, 698 (U.S. 1978).  Nonresidents may be subject to local personal jurisdiction based on their having committed acts with *foreseeable consequences* in the forum state, *e.g.,* defamations published outside the state regarding forum resident and aimed at audience in forum state, *Calder v. Jones*, 465 U.S. 788 - 790, 104 S.Ct. 1482, 1487 (U.S. 1984).

In the present case, defendant has purposefully directed its activities at Washington by voluntarily engaging in a business relationship with Washington Shoe and contracting for the sale of thousands of items from the Washington-based company.

Defendant's description of the so-called facts of this case falls short of the complete truth.  Defendant argues that "the only contacts between the parties were unrelated to the present lawsuit and were limited to Washington Shoe sending an agent to Arkansas to meet with representative of A-Z."  MOTION TO DISMISS, 5:8-11.  Defendant fails to mention, however, the fact that following the meeting with Washington Shoe's salesman, defendant voluntarily and purposefully entered into multiple contracts with Washington Shoe to purchase its boots and shoes.  R. MOEHRING DECL. ¶ 9, EXHIBITS 1-2.  The purchases were not limited to one or two items.  Rather, **defendant has purchased 3,082 boots** and other items from Washington Shoe, to date.  Hence, contrary to defendant's statement noted above, the relationship was not limited to the meeting between the parties, but rather extended much further and actually amounted to an on-going, continuous business relationship.  Defendant also applied for and received a line-of-credit from Washington Shoe.  R. MOEHRING DECL. ¶ 10, EXHIBIT 2.

In *Burger King*, the court found that a defendant who "deliberately" engages in "activities" in the forum state, and creates "continuing obligations" with residents of that

state "manifestly has availed himself of the privilege of conducting business there" and likewise "to the burdens of litigation in that forum as well." *Burger King* at 476. Applying this principle to the present case, it is reasonable for the court to find that the purchase of over 3,000 items over three years constitutes "significant activities," therefore, subjecting defendant to personal jurisdiction in Washington. Moreover, the continuity of the relationship was initiated and solidified by defendant when it applied for the line-of-credit to purchase boots and other items.

Stated another way, the function of the "purposeful availment" requirement is to, essentially, ensure that defendants are not forced to litigate in a foreign jurisdiction based solely on "random, fortuitous or attenuated contacts." *Id.* at 475. Here, defendant's contacts are not random, fortuitous nor attenuated. Thus, it is reasonable that defendants would be required to litigate here in Washington.

### 2.      The "Arising Out Of" Requirement.

As stated above, the second prong of specific jurisdiction requires that plaintiff's cause of action arises out of or results from defendant's forum related contacts. *Burger King* at 478. In the present case, the relationship between Washington Shoe and defendant first began with a meeting between the two wherein defendant was given brochures and catalogues depicting Washington Shoes' items available for sale. JAMES DECL. ¶ 3 AND 5. Throughout the on-going relationship defendant was given the catalogues that depicted the very boots at issue – the *Spider* boot and the *Ditsy Dot* boot. JAMES DECL. ¶ 5. To say that defendant's infringement of these boot designs did not arise out of its relationship with Washington Shoe is simply not true.

12

It would be manifestly unfair to allow defendant to escape having to account for consequences resulting from its wrongful tortuous activities which directly resulted from its relationship with Washington Shoe.

### 3.       The Fairness Requirement

The third and final requirement under specific jurisdiction focuses on the notion of "fair play and substantial justice." *Burger King* at 463.   This is not a one-sided balancing test, but rather a test which takes into account the fairness to the defendant as well as to plaintiff and the forum state. *Id* at 477. *Burger King* also <u>explicitly places the burden upon defendant to demonstrate unreasonableness</u> and, further, requires that defendant put on a "compelling case." *Id* at 476 – 477.

Here defendant does not even make a tenable case, let alone a compelling one. In fact, defendant presents no facts regarding any burden on it to defend in this jurisdiction or the" judicial system's interest in obtaining the most efficient resolution" as dictated in *Burger King*. *Id*.   Instead, defendant makes a perplexing reference to San Diego, Key West and Augusta, which is both irrelevant and not well-taken. MOTION TO DISMISS, 6:11–13.   Defendant appears to be making the argument that it can sell the infringing boots in any place other than Seattle, with no consequences, since Washington Shoe is located in Seattle.   The very idea a willful copyright infringer could escape the long-arm of the law so easily offends notions of fair play as a whole.

In addition to defendant's apparent sarcasm, defendant actually misleads this court by stating that it operates a "completely passive" website.   If defendant was actually concerned about fairness, it would mention the fact that it operates a store on e-Bay and has another website wherein it sells wholesale factory closeouts directly from its own

website.  MCCORMACK DECL. ¶ 10, 11, EXHIBITS 7 AND 8.  To illustrate this point further, Tonia Dray declares that she is the officer and manager of A-Z Factory Closeouts, Inc. DRAY ¶ 1.  Why she would then state that "our website is 'atozwharehouse.com'" and that it is "purely passive," is puzzling when defendant actually operates "shop.a-2-zwholesale.com" and the e-Bay store.  MCCORMACK DECL., EXHIBITS 6, 7 AND 8. Defendant's e-Bay site clearly states that it operates as "A-Z Closeouts, Inc.," as depicted in the facts section above. *Id.*

In sum, Washington Shoe has made a *prima facie* showing of the existence of personal jurisdiction.  First, defendant purposefully availed itself to Washington by voluntarily engaging in a business relationship with Washington Shoe for the past three years and by opening, and utilizing, the line-of-credit with Washington Shoe.  Second, this case of action arises directly from this relationship between defendant and Washington Shoe.  Defendant was given catalogues with depictions of Washington Shoe's designs – the very designs that defendants infringed.  These same catalogues indicated that the designs and intellectual property are owned by Washington Shoe.

Finally, defendant has not met its requisite burden of proving unreasonableness or unfairness under the standard set forth in *Burger King*.  On the other hand, Washington has a great interest in protecting the interests of its own residents*, i.e.,* Washington Shoe. Moreover, Washington Shoe would be severely damaged if forced to sue its tortfeasor / copyright infringer in another state, especially when Washington Shoe's designers, intellectual property, headquarters, owners and principle place of business are located in Washington.  In light of the above, this Court should find that defendant is subject to jurisdiction in Washington.

**C.      Additional Bases for Specific Jurisdiction**

Although Washington Shoe need only make a *prima facie* showing of jurisdiction, which it has done, additional ground exist for this court to find the existence of personal jurisdiction over defendant.  These include the theory of jurisdiction based on the "effects test" of intentional torts and the corporate injury notion regarding trademark and copyrights.  These are laid out more fully below.

**1.      Intentional Torts**

If a nonresident acting outside the state intentionally causes injuries within the state, local jurisdiction is presumptively not unreasonable: under such circumstances, defendant must "reasonably anticipate" being hauled into court in the forum state. *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487 (U.S. 1984); *Gordy v. Daily News LP*, 95 F.3d 829, 834 (9th Cir. 1996).  In such cases, "a single act by defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."  *Lewis v. Fresne*, 252 F.3d 352, 358 - 359 (5th Cir. 2001).  In other words, "purposeful availment" is satisfied where: 1) defendant committed a wrongful intentional act; 2) expressly aimed at the forum state; 3) caused harm that defendant knew or should have known was likely to be suffered in the forum state.  *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).  Examples of wrongful (tortious) acts aimed at forum residents that subject nonresident actors to location jurisdiction include: defamation, intentional infliction of emotional distress, invasion of privacy, copyright infringement, and trademark infringement.  *Calder v. Jones*, 465 U.S. 783, 790, 104 S. Ct. 1482, 1487 (U.S. 1984); *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082, 1087-

15

1088 (9th Cir. 2000), (trademark infringement in attempting to misappropriate forum resident's internet domain name).

As the *Calder* court found, a tortuous act is found to exist where its effects are suffered.  *Calder* at 1487.  A copyright infringement is an example of a wrongful or tortuous act.  In this case, Washington Shoe is unequivocally a resident of Washington; it conducts a great deal of business in Washington and maintains its principle place of business in Washington .  MCCORMACK DECL. ¶ 5.  Any copyright infringements against it would cause negative effects for its business and reputation, which would necessarily be "felt" in Washington.

As indicated above, Washington Shoe has been a local Washington business for over 100 years.  R. MOEHRING DECL. ¶ 2.  It has developed a reputation for fine products of excellent quality and design.  *Id.*  When "knock-offs" of its products are sold and are of lesser quality than its own products, Washington Shoe's reputation is axiomatically damaged, thus causing its business to suffer from the tarnished reputation.  Therefore, examining the facts of this case through the eyes of the *Calder* court and the "effects test" reveals that defendant is, in fact, subject to jurisdiction in this State since the effects of defendant's wrongful infringement of Washington Shoe's copyrights is realized in Washington.

### 2.   Jurisdiction Based on Where Corporation Suffers Harm (Copyright and Trademark Infringement)

In addition to the above, a corporation may suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business.  *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 - 1112 (9th Cir. 2002).  (European defendant's

16

defrauded corporation headquartered in California, causing jurisdictionally sufficient harm in California).

Local jurisdiction will usually be upheld in copyright and trademark cases if the nonresident defendant knowingly caused an effect in the forum state, *e.g.,* copying or unconsented use. *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 858 (11th Cir. 1990). *Keds Corp. v. Renee International Trading Corp.*, 888 F.2d 215, 219 (1st Cir. 1989). This same rule applies generally where harm occurs as noted above.

A forum has personal jurisdiction under the "effects test" when that "forum in which a plaintiff corporation has its principal place of business is in the same forum toward which defendants expressly aim their acts." *Dole Food,* 303 F.3d 1104, 1114. The U.S. Supreme Court has recognized copyright infringement as a tortious act aimed at the forum. *See Calder,* 465 U.S. 783, 790. Plaintiff Washington Shoe Company is alleging copyright infringement. Plaintiff is incorporated in the State of Washington and has its principal place of business in Washington. In addition, Plaintiff creates its fanciful boot designs in Washington, so the intellectual property is located in the forum state. The damage occurring to Washington Shoe's intellectual property, even if infringement is outside the state, occurred in Washington. *Dole* at 1111 – 1112;. *Cable/Home Communication*, 902 F.2d 829, 858; *Keds Corp.,* 888 F.2d 215, 219.

This is enough of a connection to the forum state and the cause of the lawsuit to create personal jurisdiction. Defendants' unauthorized copying injured Plaintiff's intellectual property located and created in the State of Washington.

**D.      General Personal Jurisdiction**

The extent to which a federal court can exercise personal jurisdiction (absent the traditional basis of consent, domicile and physical presence) depends on the nature and quality of defendant's "contacts" with the forum state. If a defendant's activities are substantial, continuous and systematic, a federal court can exercise jurisdiction as to any cause of action, even if it is unrelated to defendant's activities within the state ("general jurisdiction"). *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 446, 72 S. Ct. 413, 418 (U.S. 1952). A nonresident may be subject to local general jurisdiction even if its forum activities are but a small percentage of its nationwide business. The relevant inquiry is whether the forum operations are "continuous and systematic." *Dorsey v. American Golf Corp.*, 98 F.Supp.2d 812, 815 (E.D. Mich. 2000).

For example, entering into a marketing contract with an online computer service to distribute a nonresident's software may subject the software provider to personal jurisdiction where the computer service is located. By deliberately setting in motion an ongoing marketing relationship with the computer service the nonresident software provider should reasonably foresee consequences in the forum state. *CompuServ, Inc. v. Patterson*, 89 F.3d 1257, 1258 (6th Cir. 1996).

### 1.   Maintaining Web Site Accessible To Local Computer User As A Basis For Jurisdiction

Whether the nonresident operator of an internet web site accessible to computer users in the forum state is subject to local jurisdiction depends on the nature of the web site and the nature of the activity conducted hereon. *Graduate Management Admission Council v. RAJU*, 241 F.Supp.2d 589, 598 (E.D. Va. 2003). An interactive web site is one that enables a computer user to exchange information with the host computer. *Id.* General personal jurisdiction may also be upheld where a foreign corporation conducts

18

substantial activity in the foreign state, apart simply from having a local independent representative; e.g. mail order campaigns, direct sales, web site sales, etc.  *See, Michigan National Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 466 (6th Cir. 1989).

As delineated above, defendant has more than a mere "informational" website. MCCORMACK DECL., EXHIBITS 6, 7 AND 8.  It, in fact, operates several interactive websites, one of which is actually called "shop.a-z."  *Id.*  When, as in this case, the nature of the website enables users to exchange host information and make purchases from anywhere, including Washington, general personal jurisdiction may be found.  *Michigan National Bank* at 888.

Defendant's reliance on *Cybersell, Inc. v, Cybersell, Inc,* 130 F.3d 414 (9th Cir. 1997) to rebut general jurisdiction is misplaced.  In *Cybersell*, there was no showing by plaintiff that defendant was even aware of plaintiff's existence, let alone targeted them individually.  *Cybersell* at 420.  Here, not only was defendant aware of Washington Shoe's existence, but it voluntarily became a long-standing, systematic and continuous customer of Washington Shoe and directed payments to Washington Shoe in Washington.

### E.    Washington State Long-arm Statute

Washington's long-arm statute, RCW 4.28.185, allows the assertion of personal jurisdiction over a defendant who transacts business in Washington. The applicable portion of the statute provides for personal jurisdiction if any of the following occur:

(1) The transaction of any business within this state; or
(2) The commission of a tortious act within this state; or
(3) The ownership, use, or possession of any property whether real or personal situated in this state.

RCW 4.28.185 (2009).  Any of the above referenced acts, alone, can establish personal jurisdiction.

The "transacts business" basis of the Washington State long-arm statute is satisfied because defendant had an on-going contractual relationship with defendant to sell boots and shoes. This relationship, including an application for credit with Washington Shoe emanated from Washington. Defendant has access to Washington Shoe's catalogues showing ownership of the copyrighted designs and soliciting orders for the same.  Defendant chose to not order the goods from Washington Shoe and instead ordered infringing product from another source.  Washington Shoe's intellectual property is also located in the state. Together, these facts create enough nexus that it would not offend notions of fair play and justice that defendant be hauled into court in Washington State.  Indeed, defendant should expect it.

Copyright infringement is a tortuous act and therefore the tortuous activity basis of the Washington long-arm statute is also satisfied. Additionally, the damage from the intellectual property violations occur in Washington regardless of where the infringing sales took place.  Washington Shoe's intellectual property is also located in the state. Further, the fact that the infringement arose from an on-going contractual relationship between Washington Shoe and defendant creates a further nexus such that defendant should expect to be sued in Washington.

Lastly, the "ownership or use" basis is also satisfied because Washington Shoe's intellectual property is located with the state. *Dole* at 303 F.3d 1104, 1111 – 1112; *Cable/Home Communication*, 902 F.2d 829, 858; *Keds Corp.,* 888 F.2d 215, 219. Intellectual property is an intangible form of personal property, *i.e.,* not real property.

Since the use of Washington Shoe's intellectual property is unauthorized (infringing use) the "use" basis of the Washington long-arm statute is satisfied.

### F.   Washington State –Doing Business Common Law-Rule

In cases where the Washington long-arm statute is not specifically satisfied for establishing personal jurisdiction, Washington continues to recognize the common-law rule allowing jurisdiction over a defendant who is *doing business* in the state of Washington.  *Raymond v. Robinson*, 104 Wash. App. 627, 15 P.3d 697 (Div. 2 2001), and authorities cited therein (holding that Washington court had specific, but not general, jurisdiction over Arizona business). The test for jurisdiction is whether the defendant carries on "substantial and continuous" business activities within the state. Jurisdiction based upon this theory is often referred to in a short-hand way as *general jurisdiction.*

### V.   DISCOVERY TO DETERMINE JURISDICTIONAL FACTS

Motions to dismiss under 12(b)(2) may test either plaintiff's theory of jurisdiction or facts supporting the theory.  In evaluating plaintiff's jurisdictional theory the court need only determine whether the facts alleged, if true, are sufficient to establish jurisdiction.   No evidentiary hearing or factual determination is necessary.  *Credit Lyonnais Securities USA, Inc. v. Alcantara*, 183 F.3d 151, 153 (2nd Cir. 1999).

Plaintiff often needs to conduct discovery to make sufficient showing of defendant's "contacts" with the forum state.  Where the motion to dismiss is made at the outset of the case, the court should continue the matter to permit such discovery.  *See Orchid Biosciences, Inc. v. St. Louis University*, 198 F.R.D. 670, 672-673 (S.D. Ca. 2001). (Plaintiff not required to make *prima facie* showing of basis for jurisdiction discovery.

Where a motion to dismiss challenges the facts alleged, a Rule 12(b)(2) motion should be decided on the basis of competent evidence, usually declarations and discovery materials. *Data Disk, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1289 fn.5 (9th Cir. 1977) and *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 753 (5th Cir. 1996) (court may consider "affidavits, interrogatories, depositions, oral testimony or any combination of the recognized methods of discovery.").

In addition to the undisputed facts noted above, Washington Shoe believes the following facts to also be true and with limited discovery could be further established as needed. In evaluating plaintiff's jurisdictional theory the court need only determine whether the facts alleged, if true, are sufficient to establish jurisdiction.  No evidentiary hearing or factual determination is necessary.  *Credit Lyonnais Securities* 183 F.3d 151, 153.

The following facts, would further establish the requisite "minimum contacts" with Washington State to establish both general and specific jurisdiction.

1. Defendant has and has had systematic and continuous contractual relationships with Washington entities, including shoe manufacturers.

2. Defendant has sold and or imported the infringing boots in Washington.

3. Defendant has and has had systematic and continuous internet and retail sales and / or solicitations to U.S. residents and Washington state residents via the internet or otherwise.

Although Washington Shoe has made a *prima facie* case of personal jurisdiction based on the facts and declarations submitted, if the court was still inclined to grant defendant's motion, it would be proper to continue the matter to permit discovery of important jurisdictional facts, as described in items 1-3 listed directly above. *Orchid Biosciences,* 198 F.R.D. 670, 672-673; see also *Data Disk, Inc.,* 557 F.2d 1280, 1289 fn.5

22

(motion to dismiss at outset of case should be decided on the basis of competent evidence, usually declarations and discovery materials); 87 F.3d 751, 753 (court may consider "affidavits, interrogatories, depositions, oral testimony or any combination of the recognized methods of discovery.").

## VI.   CASE MAY BE TRANSFERRED TO DISTRICT IN WHICH DEFENDANT IS SUBJECT TO PERSONAL JURISDICTION

The Supreme Court has held that a district court lacking both personal jurisdiction and proper venue can transfer the action under 28 U.S.C. § 1406(a) to a district where both defects are avoided. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S.Ct. 913, 916 (U.S. 1962). Some courts hold this rule applies even where venue is proper in the transferor district, "[W]hether or not venue was proper, lack of personal jurisdiction could be cured by transfer to a district in which personal jurisdiction could be exercised, with the transfer authority derived from either 28 U.S. § 1406(a) or § 1404(a)." *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179 fn.9 (2nd Cir. 2000). Other courts reached the same result under 28 U.S.C. § 1631, which provides that, if there is want of jurisdiction, "the court shall, if it is in the interest of justice, transfer such action… to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." *Roman v. Ashcroft* 340 F.3d 314, 328 (6th Cir. 2003). The statute applies to federal courts identifying any jurisdictional defect, regardless of whether it involves personal or subject matter jurisdiction. *Viernow v. Euripides Develop. Corp.,* 157 F.3d 785, 793 (10th Cir. 1988).

Although Washington Shoe does not believe that defendant can overcome the undisputed jurisdictional facts rooting this case here in Washington, if such facts could be established after the appropriate discovery (requested above) then it would be proper to

23

transfer the case to an alternative venue rather than dismiss the case in its entirety.  *See, e.g., Roman,*340 F.3d 314, 328  ("the court shall, if it is in the interest of justice, transfer such action… to any other such court in which the action or appeal could have been brought at the time it was filed or noticed.").

## VII.   CONCLUSION

In response to defendant's motion to dismiss, plaintiff only needs to demonstrate a *prima facie* showing that personal jurisdiction exists and the court must accept complainant's uncontroverted factual allegations as true.

Washington Shoe has made a *prima facie* showing of personal jurisdiction because:  1) defendant had an on-going contractual relationship and a line-of-credit with Washington Shoe Company to purchase boots and shoes; 2)  as part of this on-going relationship defendant had access to Washington Shoe catalogues and brochures that showed the copyrighted designs at issue (the catalogues also indicated that the designs were owed and protected by Washington Shoe Company);  3) defendant ordered infringing boots from a different source rather than purchasing from Washington Shoe Company catalogues as part of their on-going contractual relationship; 4) the infringement arose from a specific and on-going contractual relationship based in Washington state.

Dated this 28th day of September 2009

_____/s Tim McCormack/
Timothy B. McCormack, WSBA # 28074
McCormack Intellectual Property Law
Business Law P.S.
617 Lee St.
 Seattle, WA 98109
p. 206.381.8888/ f. 206.381-1988
tim@McCormackLegal.com

24